J-A13039-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA WOODRUFF; R. WILLIAM WOODRUFF; AND CORIANDER WOODRUFF | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 1227 WDA 2025 |
| FOUR QUARTERS INTERFAITH SANCTUARY OF EARTH RELIGION, A PENNSYLVANIA NON-PROFIT CORPORATION; AND ORREN P. WHIDDON | : | |

Appeal from the Order Entered May 22, 2025
In the Court of Common Pleas of Bedford County
Civil Division at No: 526 CD 2019

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: August 11, 2026**

Patricia Woodruff (Patricia), R. William Woodruff (William), and Coriander Woodruff (Coriander) (collectively, Appellants) filed this appeal after we granted their petition for permission to appeal from the May 22, 2025 order limiting damages in their breach of contract claim against Four Quarters Interfaith Sanctuary of Earth Religion, a Pennsylvania Non-Profit Corporation, and Orren P. Whiddon (collectively, Four Quarters).[1]  After careful review, we quash the appeal as interlocutory and remand for further proceedings.

---

[1] We address Appellants' appeal from the trial court's disposition of their defamation claim against Four Quarters in a separate decision at 887 WDA 2025.

*BACKGROUND*

On May 19, 2019, Appellants filed a complaint against Four Quarters raising claims of breach of contract (Count I); declaratory judgment (Count II); and defamation (Count III).[2]

Four Quarters owns 200 acres (Property) in Bedford County. Answer and New Matter, 6/24/19, at ¶¶ 16-17. This Court previously described Four Quarters as "a non-profit organization that operates a licensed winery. Four Quarters holds 'gatherings of people for a variety of activities' including religious ceremonies, music festivals, and other festivals at which they 'market and sell mead products,' which accounts for the majority of their income." ***Whiddon v. Northcraft***, No. 356 WDA 2019, 2019 WL 5095786, at *1 (Pa. Super. filed Oct. 11, 2019) (unpublished memorandum) (citation omitted). Orren P. Whiddon "is a founder and member of Four Quarters." ***Id.***

The parties' dispute arose in 2018, when Appellants assert that Four Quarters "issued a letter of censure" to Patricia and "barred William and Coriander from accessing the Property." Complaint, 5/19/19, at ¶ 35-36. Appellants claim they were "Camp" and "Church" members of Four Quarters for more than a decade, and had purchased "Camping Memberships" which entitled them to use the "same campsites year after year." ***Id.*** at ¶¶ 18-20. According to Appellants, Patricia purchased "a special type of Camping

---

[2] Appellants discontinued the "entirety of Count II" for declaratory judgment. ***See*** Order, 5/22/25.

Membership called a 'Lifetime Sustaining Membership,'" William purchased "a special type of Camping Membership called a 'Lifetime Promoting Membership'", and Coriander purchased "a special type of Camping Membership called a 'Life Sustaining Member[ship].'" *Id.* at ¶¶ 22-25, 28-29. Appellants maintain that the memberships entitled them to "camp on the Property on a regular basis" and "camp at a specific campsite located on the Property, with ... exclusive possession of that campsite year after year." *Id.* at ¶¶ 26-27.

At Count I, Appellants averred "that Patricia, William and Coriander have the right to reside on the Property for their respective lives pursuant to the specified terms" of "oral agreements" with Four Quarters. *Id.* at ¶¶ 48-49. At Count III, Appellants averred that Four Quarters published defamatory remarks about them in Four Quarters' newsletter, "The Members Muse." *Id.* at ¶¶ 40-43.

Four Quarters filed an answer and new matter denying Appellants' claims. Four Quarters stated there was "no such thing as a 'camping membership.'" Answer and New Matter at ¶¶ 18-21. They averred that "Four Quarters members are permitted to create seasonal camps, but a tent permit must be purchased for same ... and be paid and renewed each year." *Id.* at ¶ 19. Four Quarters "specifically den[ied] that they breached any agreements with [Appellants] at any time." *Id.* at ¶¶ 50-52. Four Quarters sought dismissal of Appellants' complaint, averring that they "breached no duty, contractual or otherwise," and that Appellants' defamation claim "fail[ed] to

- 3 -

set forth a cause of action upon which relief can be granted." *Id.* at ¶¶ 78, 83.

On March 17, 2025, Four Quarters filed a motion for summary judgment on Appellants' defamation claim; Four Quarters also filed a motion *in limine* to limit damages in Appellants' breach of contract claim. The trial court held a pre-trial conference on May 19, 2025. Four Quarters first argued that they were entitled to summary judgment on Appellants' defamation claim because the claim did "not meet the standards for defamation." N.T., 5/19/15, at 5. The trial court agreed and advised counsel that it would grant summary judgment on the defamation claim. *Id.* at 6.

The trial court then addressed Four Quarters' motion *in limine*. Appellants sought an "award to Patricia, William and Coriander [of] a money judgment equal to the value of the cost to rent a similar camp site and attend similar events for the remainder of their respective lives." Complaint at ¶ 52(b). Four Quarters argued that Appellants had "not during the course of discovery provided any testimony, documentation, and/or evidence concerning the alternative costs and expense of renting a similar camp site." Motion *in Limine*, 5/19/25, at ¶ 5. Therefore, Four Quarters requested "preclusion of any such monetary claims and damages, including the introduction of evidence, and testimony concerning the same under the circumstances at the time of jury trial." *Id.* at ¶ 6.

Appellants' counsel maintained that Appellants "were entitled to consequential damages in the amount of money necessary to allow

[Appellants] to camp in a similar situation, on a similar campground for the rest of their life." N.T. at 7. Appellants' counsel stated that the consequential damages of finding another place to camp would be "hundreds of thousands of dollars." *Id.* at 8. After further discussion, the trial court remarked that it did not "follow that argument." *Id.* at 9. The court stated, "if there was a breach of contract, to be put back in the same place [Appellants] would have been, had the contract not been breached [is appropriate]. I am going to say that evidence [of Appellants' alleged consequential damages] would never go back to the jury." *Id.* at 10-11.

The discussion continued:

THE COURT: So, at this point, counsel, do you – are you asking to pick the jury today on just that limited issue or do we want to continue this and see about your ability to take an interlocutory appeal then?

[APPELLANTS' COUNSEL]: I think at this time, Your Honor, we are all in agreement that it would not be a good use of the [c]ourt's time, judicial resources to have a jury trial based upon damages of that number. Like we also talked about, candidly, it probably should go to an arbitration board before then.

THE COURT: Okay.

[APPELLANTS' COUNSEL]: So, I do think though that in order to conclude this case, given it is six years old, it would be wise for us to explore and see, is there a process by which we have the Superior Court review your decision. That's ultimately the crux of the case. So, that -- I would ask for at least, you know, again, within the same 30-day window that I asked for before, regarding supplementing the record on your decision on the motion for summary judgment and within that period of time, we could take a look at the books, then suggest to the [c]ourt the manner in which procedurally we could hopefully move forward to have the [c]ourt's decision reviewed. Because if the Superior Court does uphold your decision, Your Honor, I think that basically ends the

case. [Appellants] or [Four Quarters] are going to write us a check and we all move on with life. That's a key part of this case that I think needs to be decided and again, in the name of judicial economy and efficiency, I think it's just the right way to handle this.

*Id.* at 11-12.

The trial court asked if Four Quarters' counsel had "any objection" to an appeal, and counsel said, "No." *Id.* at 12. The court then advised:

I will reduce everything I just said to an order. I won't formally enter judgment at this point until you guys ask me to. And when you are ready to take the interlocutory appeal, [if] you believe you need another hearing to do that correctly, I'll leave that up to you. However you guys think you can get it up correctly to the Superior Court then.

*Id.* at 14.

On May 22, 2025, the trial court entered an order granting summary judgment on the defamation claim and granting Four Quarters' motion *in limine*. Order, 5/22/25, at 1-2. The order provided that the "amount of [Appellants'] request for damages in Count I shall be limited only to actual fees paid for lifetime memberships." *Id.* at 1. The order also stated that jury selection was "continued generally to permit [Appellants the] opportunity to seek an interlocutory appeal." *Id.* at 2.

On June 11, 2025, Appellants filed motions for reconsideration and appellate certification of the May 22, 2025 order to "facilitate resolution of the entire case." Motion for Appellate Certification, 6/11/25, at ¶ 15. On June 25, 2025, the trial court entered an order granting relief as to both the defamation and breach of contract claims. With regard to breach of contract,

the order stated that the court was amending the May 22, 2025 "order to provide that it involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." Order, 6/25/25, at 1.[3]

Appellants simultaneously pursued relief with this Court related to the damages issue in their breach of contract claim. On June 18, 2025, Appellants filed a petition for permission to appeal from the May 22, 2025 order at 37 WDM 2025. Appellants averred that the trial court's ruling on Four Quarters' motion *in limine* "involves a controlling question of law" and "deals with a fundamental issue of law regarding what are [Appellants'] damages for their breach of contract claim." Petition for Permission to Appeal, 6/18/25, at 11. This Court granted the petition in a *per curiam* order which stated:

> Upon consideration of the July 18, 2025 petition for permission to appeal, and noting no response filed thereto, the petition is GRANTED. This matter shall proceed before this Court as an appeal from the order entered May 22, 2025, in the Bedford County Court of Common Pleas, Civil Division, at case number 526 CD 2019.

Order, 10/3/25.

On appeal, Appellants present the following issue:

1. Did the [t]rial [c]ourt commit an abuse of discretion by misapplying the law when it granted Four Quarters's oral motion

---

[3] On July 21, 2025, Appellants filed their separate appeal from the June 25, 2025 order at 887 WDA 2025. As stated above, that appeal involves the trial court's ruling on defamation.

- 7 -

*in limine* to prohibit [Appellants] from introducing to the jury evidence in support of their damages for their breach of contract claim in the form of their expectation damages, *i.e.* the amount of money necessary to place [Appellants] in a position they would have been in but for Four Quarters's breach of the contract, and to instead limit [Appellants'] damages to only the money they paid to Four Quarters under the agreement.

Appellants' Brief at 7.

*DISCUSSION*

After careful review, we conclude that the trial court's grant of Four Quarters' motion *in limine* and the issue of damages is not properly before us. *See T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1055-56 (Pa. Super. 2008) (holding that this Court may revisit the appealability of an order when we have issued a *per curiam* order which lacks detailed reasoning); *Kensey v. Kensey*, 877 A.2d 1284, 1288-89 (Pa. Super. 2005) (quashing appeal after "re-evaluat[ing] whether permissive review [wa]s appropriate" and finding "the motions judge's basis … was in error.").

We "first ascertain whether [an order] is properly appealable, because the question of appealability implicates the jurisdiction of this [C]ourt." *Commonwealth v. Borrero*, 692 A.2d 158, 159 (Pa. Super. 1997). "Accordingly, this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." *Knopick v. Boyle*, 189 A.3d 432, 436 (Pa. Super. 2018) (citations omitted). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." *Henry v. Colangelo*, 348 A.3d 1181, 1184 (Pa. Super. 2025).

"Under Pennsylvania law, an appeal may only be taken from an interlocutory order as of right (Pa.R.A.P. 311), from a final order (Pa.R.A.P. 341), from a collateral order (Pa.R.A.P. 313), or from an interlocutory order by permission (Pa.R.A.P. 31[2], 1311, 42 Pa.C.S. § 702(b))." **Kensey**, 877 A.2d at 1287 (citations omitted). As the May 22, 2025 order in this case is interlocutory, Appellants sought permission to appeal pursuant to Rule 1311. Rule 1311 provides that an appeal "may be taken by permission from an interlocutory order certified under 42 Pa.C.S. § 702(b)." Pa.R.A.P. 1311(a)(1). Rule 702(b) states:

> When a [trial] court … in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S. § 702(b).

Appellants claim the trial court's order "involves a controlling question of law as to which there is substantial ground for difference of opinion because the order deals with a fundamental issue regarding what are [Appellants'] damages for their breach of contract claim." Petition for Permission to Appeal at 11. Appellants emphasize that the trial court's ruling precludes them from

potentially recovering hundreds of thousands of dollars in "'expectation' damages."[4] *Id.* Appellants state:

> Pennsylvania law recognizes "expectation" damages, which are designed to protect the "promisee['s] ... 'expectation interest,' which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed." Pennsylvania law has long held that a party has a right to seek damages in a breach of contract action for their expectation interest.
>
> ***
>
> [T]his Court granting permission to review the [t]rial [c]ourt's decision will materially advance the ultimate termination of the matter and promote judicial efficiency. This is so because if this Court sustains the [t]rial [c]ourt's decision, [Appellants] will know for certain that they cannot claim more than $5,450 in damages in this matter.

*Id.* at 11-12 (citations and emphasis omitted). Appellants seek to expedite the litigation, arguing that "if this Court does not [decide the damages issue], then the [p]arties and [t]rial [c]ourt would have to go through a number of unnecessary actions in order to allow this Court to review the [t]rial [c]ourt's decision *via* the traditional appeal route." *Id.* at 13. We are not persuaded by Appellants' argument.

While the May 22, 2025 order may present a controlling question of law regarding a difference of opinion as to Appellants' entitlement to damages — characterized as consequential, expectation, or otherwise — we cannot

---

[4] Appellants' counsel did not refer to expectation damages at the pre-trial conference. Counsel repeatedly characterized "the money necessary to allow [Appellants] to camp somewhere that's similar [to Four Quarters] for the rest of [their lives]" as "consequential damages." N.T. at 7-10.

- 10 -

conclude that disposition of the damages issue materially advances the case where there has been no determination of whether Four Quarters breached a contract with Appellants. If we decide the damages issue, "our decision might very well be a fruitless exercise" because Four Quarters may prevail on the breach of contract issue. *Pennsylvania Bankers Ass's v. Pennsylvania Dep't of Banking*, 948 A.2d 790, 797 (Pa. 2008).

This Court typically reviews the determination of whether a contract was breached and a trial court's pretrial ruling that "limit[s] the amount of damages recoverable" after trial. *Quinn v. Bupp*, 955 A.2d 1014, 1015–16 (Pa. Super. 2008). In *Quinn*, a buyer of real estate sued the seller for breach of contract after the seller refused to complete the sale. Before the case went to trial, the court issued a ruling restricting the amount of damages the buyer could recover. *Id.* at 1016. On appeal, this Court "first address[ed] the issue … pertain[ing] to whether [the s]eller breached the agreement of sale [because] an adverse ruling against [the b]uyer on this question would preclude the award of any damages and moot his appeal." *Id.* at 1016-17. It was only after we resolved the breach of contract issue in the buyer's favor that we "address[ed] the issue … which involve[d] the pretrial ruling as to consequential damages." *Id.* at 1020. We explained:

> The pretrial order in question was an interlocutory order because it merely limited the damages recoverable in this action and did not resolve all issues as to all parties or otherwise terminate the litigation. The final order in this action was the one that disposed of post-trial motions, which resolved all outstanding claims as to the two parties and from which [the b]uyer filed his timely appeal. It is established that a notice of appeal filed from the entry of the

- 11 -

final order in an action draws into question the propriety of any prior non-final orders.

*Id.* (citations omitted). We observed that the trial court's ruling limiting damages "was contested pretrial" by the buyer. *Id.* Notably, "we reverse[d] in part [the trial court's] decision to restrict the amount of damages" and remanded "solely for a hearing on damages." *Id.* at 1016.

Similar to *Quinn*, we may consider Appellants' damages issue after the action has been fully litigated. Rule 702 "permits this Court 'in its discretion' to entertain an appeal of an interlocutory order." *Kensey*, 877 A.2d at 1289 (citing Pa.R.A.P. 702(b)). We understand that Appellants seek the advantage and efficiency of appellate input given the sums involved, settlement considerations, and "significant economic expense of a trial." Petition for Permission to Appeal at 11. However, this Court does not serve in an advisory capacity. In addition, Pennsylvania courts have a longstanding "policy against piecemeal litigation." *See Pennsylvania Bankers Ass'n*, 948 A.2d at 798 (recognizing "well-documented efforts of avoiding piecemeal litigation."). This Court has explained:

> The purpose of the interlocutory procedure rule to secure immediate appellate review is not designed to encourage or authorize the wholesale appeal of difficult issues when appellate review would be better served by having all issues that are raised in a trial initially reviewed by the trial court and then subject to one review if necessary. Accordingly, we believe that judicial economy and the proper roles of trial and appellate courts would be best served by delaying our review pending the completion of all phases of the … proceedings in the trial court.

*Kensey,* 877 A.2d at 1289. Our Supreme Court recently reiterated that lack of immediate appellate review does not insulate issues from appellate review. *In re City of Philadelphia*, 351 A.3d 752, 765 (Pa. 2026) (stating that "issues … related to the calculation of damages, if properly preserved, may be addressed through the normal appellate review process after the entry of a judgment following … trial."). *Id.* For these reasons, we quash this appeal.

Appeal quashed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/11/2026

- 13 -